UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| DENISE KAPLAN, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | No. 14 C 05720 |
| v. | ) ) | Chief Judge Rubén Castillo |
| JPMORGAN CHASE BANK, N.A., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Denise Kaplan ("Plaintiff") brings this action against Defendant JPMorgan Chase Bank ("JPMC") alleging breach of contract and breach of fiduciary duty in allowing her former husband to add himself to her bank accounts without authorization. Presently before the Court is Defendant's motion to dismiss the second amended complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court grants Defendant's motion.

### RELEVANT FACTS

The Court presumes familiarity with the facts of this case as outlined in the Memorandum Opinion and Order issued on May 12, 2015 (the "Prior Order"). (R. 46, Mem. Op. & Order.) On January 12, 2009, Plaintiff opened two accounts with JPMC: a checking account ending in 4531 and a savings account ending in 7373 (collectively, the "Old Accounts"). (*Id.* at 2.) When Plaintiff opened the accounts, she executed a signature card for each. (*Id.*) The Old Accounts are governed by the Account Rules and Regulations (the "Account Terms") referred to on the signature cards Plaintiff signed. (*Id.*)

When Plaintiff opened the Old Accounts in January 2009, she was the only signer on each of the accounts. (*Id.* at 3.) Subsequently, signed signature cards dated October 20, 2009, with respect to the Old Accounts were provided to JPMC. (*Id.*) The October 2009 signature cards bear the purported signatures of both Plaintiff and her then-husband, Joel Kaplan ("Joel"). (*Id.*) Plaintiff alleges that she did not sign the October 2009 signature cards, while Joel attests that Plaintiff gave him authority to sign the cards on her behalf. (*Id.*) Plaintiff claims that in April 2011 JPMC alerted her that the Old Accounts had been subjected to fraudulent activities; as a result, she authorized JPMC to open a checking account ending in 0610 and a savings account ending in 0250 (collectively, the "New Accounts") to replace the Old Accounts. (*Id.* at 23.) Plaintiff alleges that JPMC informed her that the Old Accounts' signature cards (which, to her knowledge, only included her signature) would continue to govern the New Accounts. (R. 48, SAC at ¶¶ 25-27, 61-63.) Instead, she alleges that new signature cards were created with a forgery of her signature. (*Id.*)

Plaintiff alleges that between October 20, 2009, and April 17, 2012, Joel withdrew approximately $662,000 from the old and new checking accounts and $337,000 from the old and new savings accounts.[1] (*Id.* at ¶¶ 28, 72.) Plaintiff claims that she never received any account statements for the Old Accounts or New Accounts until March 19, 2012, when she requested them directly from JPMC. (R. 46, Mem. Op. & Order at 5-6.) Until that date, she alleges that JPMC only provided account statements to Joel. (*Id.*) After discovering that Joel had been

---

[1] Although the Court instructed Plaintiff that her amended complaint should only include transactions that occurred between February 23, 2012, and April 17, 2012, she failed to provide revised estimates of her damages for this period. Plaintiff did provide account statements covering the period at issue, but these documents are largely illegible and she does not identify which transactions were unauthorized. (R. 48, SAC at 24-46.)

2

withdrawing money from her accounts, Plaintiff first wrote to JPMC protesting those withdrawals on March 24, 2012. (*Id.* at 6.)

## PROCEDURAL HISTORY

Plaintiff initiated this action in the Circuit Court of Cook County, Illinois, on June 26, 2014, alleging negligence and breach of contract by JPMC in providing signature cards to Joel and allowing him to withdraw funds from the Old Accounts. (*Id.*) On July 25, 2014, this action was removed to this Court. (*Id.*) On September 2, 2014, JPMC moved to dismiss the two counts of Plaintiff's complaint that alleged that JPMC was negligent in allowing and accepting forged signature cards from Joel, arguing that it failed to state a claim pursuant to Rule 12(b)(6). (*Id.* at 7.) On September 11, 2014, Plaintiff withdrew these counts without prejudice. (*Id.*)

On November 26, 2014, JPMC moved for summary judgment on the remaining counts in Plaintiff's complaint, arguing that Plaintiff's claims were time-barred. (*Id.*) Plaintiff responded to JPMC's motion for summary judgment and also moved to amend her complaint, claiming that her counsel had just discovered that the Old Accounts had been replaced by the New Accounts in April 2011. (*Id.*)

On May 12, 2015, the Court granted summary judgment in favor of JPMC with respect to all transactions in the Old and New Accounts occurring between October 20, 2009, and February 22, 2012. (*Id.* at 24-25.) The Court found that, by signing the signature cards that opened the accounts, Plaintiff acknowledged that the accounts were governed by the Account Terms. (*Id.* at 2.) In relevant part, the Account Terms provided that failing to report unauthorized transactions or errors, or that one had not received account statements, would waive any claims related to those transactions or errors. (*Id.* at 3.) Because Plaintiff did not notify JPMC about the allegedly unauthorized transactions by Joel until March 24, 2012, the Court found that her claims

3

regarding transactions occurring more than thirty days before that notification were time-barred by the Account Terms. (*Id.* at 24-25.) Thus, the Court granted summary judgment to JPMC regarding the claims arising from transactions before February 23, 2012, rejected Plaintiff's proposed amended complaint because it sought recovery for those same transactions, and instructed Plaintiff to file a new amended complaint that was consistent with the Court's ruling. (*Id.*)

After her counsel withdrew, Plaintiff filed a *pro se* second amended complaint on July 20, 2015, alleging two counts of breach of contract and two counts of breach of fiduciary duty. (R. 48, SAC.) Regarding breach of contract, the SAC includes several paragraphs describing the New Accounts and alleging that Plaintiff had no knowledge that new signature cards had been signed to create them. (R. 48, SAC at ¶¶ 24-27, 60-63.) It also seeks to comply with the Prior Order by limiting its claim for damages to those transactions occurring between February 23, 2012, and April 17, 2012. (*Id.* at ¶¶ 36, 72.) Regarding breach of fiduciary duty, Plaintiff alleged that JPMC owed a fiduciary duty to her and that its failure to prevent Joel from being added to the Old Accounts constituted a breach. (*Id.* at ¶¶ 38-43, 74-79.)

JPMC filed a motion to dismiss on August 14, 2015. (R. 53, Mot. to Dismiss.) JPMC argues that, since Illinois law generally considers the relationship between banks and their depositors to be purely contractual in nature with no fiduciary obligation, Plaintiff's breach of fiduciary duty counts fail as a matter of law. (*Id.* at 6-9.) JPMC also contends that Plaintiff's remaining breach of contract claims should be dismissed, as the transactions surviving the Court's partial grant of summary judgment relate only to the New Accounts. As demonstrated by documents Plaintiff attached to the SAC, JPMC argues that the New Accounts were opened by Joel alone and that he only later added Plaintiff to the accounts. (*Id.* at 9-10.) Because JPMC had

4

no contract with Plaintiff that could require it to prevent Joel from accessing the funds in the New Accounts, JPMC argues that Plaintiff fails to state a breach of contract claim. (*Id.* at 10.) Plaintiff is now represented by counsel, who filed an opposition to the motion on her behalf. (R. 54, Pl.'s Mem. Opp'n Mot. Dismiss.) JPMC's motion to dismiss is now fully briefed. (R. 55, Def.'s Reply.)

## LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citation omitted). Nevertheless, a *pro se* complaint must be liberally construed, "however inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

In deciding a Rule 12(b)(6) motion, the Court may consider the complaint itself, "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citation omitted). Courts may take judicial notice of related court proceedings outside the pleadings without converting the motion to dismiss into a motion for summary judgment. *See Quincy Mall, Inc. v. Parisian, Inc.*, 27 F. App'x 631, 636

(7th Cir. 2011) (confirming that judicial notice may be taken of "public court documents"); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) ("[T]he purpose of requiring conversion from [a motion to dismiss] to [a motion for summary judgment], if matters outside the pleadings are considered by the court, is to make sure that each party has notice of evidence that the opposing party wants to present in support of his claim or defense[.]"); *cf. Sierra Club v. Franklin Cnty. Power of Ill., LLC*, 2005 WL 3440728, at *1 (S.D. Ill. Dec. 14, 2005) (declining to apply the *Tierney* exception because the affidavit in question "is not simply a document [the plaintiff] declined to attach to its complaint in an effort to avoid dismissal or of which it had notice of [sic] at the time it filed the complaint").

## ANALYSIS

### I. Breach of fiduciary duty claims (Counts II and IV)

JPMC first argues that Plaintiff's claims for breach of fiduciary duty fail because, under Illinois law, banks do not owe a fiduciary duty to their depositors, with whom they have a solely contractual relationship. (R. 53, Mot. to Dismiss at 6-9.) Plaintiff does not respond to this argument.

The sole basis for Plaintiff's breach of fiduciary duty claim is the bare allegation that "[t]he relationship between JPMC and Denise Kaplan was one of JPMC owing a fiduciary duty to Denise Kaplan." (R. 48, SAC at 4.) Plaintiff does not plead any facts that support this legal conclusion, nor does she even provide the "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. In addition, Plaintiff's opposition to the motion to dismiss does nothing to cure this insufficient pleading and, in fact, does not contain the word "fiduciary" at all.

Plaintiff fails to state a claim for breach of fiduciary duty under Illinois law. "Under the law of Illinois . . . a bank generally owes no fiduciary duty to its depositors. *Miller v. Am. Nat'l Bank & Trust Co. of Chi.*, 4 F.3d 518, 520 (7th Cir. 1993). "The relationship consists simply of an arms-length transaction between debtor and creditor." *Id.* As the Court noted in the Prior Order, "the relationship between a drawer and a drawee is a contractual one." (R. 46, Mem. Op. & Order at 9 (quoting *Nat'l Bank of Monticello v. Quinn*, 533 N.E.2d 846, 849 (Ill. 1988).) In other words, "[t]he duties between a bank and a depositor are defined entirely by the terms of the account agreement between them." *McKay v. Kusper*, 624 N.E.2d 1140, 1150 (Ill. App. Ct. 1993). However, Illinois law does recognize that a fiduciary duty may arise in a contractual relationship where "one party is dominated by the other" and the dominant party "accept[s] the responsibility . . . and trust of the other party." *Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1119 (7th Cir. 1992). The mere "fact that one party trusts the other is insufficient"; instead, a party "must show that he placed trust and confidence in [the other party], *and* that [the other party] gained influence and superiority over him." *Id.*

Plaintiff has not alleged that her relationship with JPMC extended beyond the typical contractual, arms-length transaction between a depositor and a bank, nor that JPMC accepted or exercised any control or influence over Plaintiff. Accordingly, the Court finds that no fiduciary relationship existed between Plaintiff and JPMC and thus Plaintiff's claims for breach of fiduciary duty fail as a matter of law. For these reasons, the Court grants JPMC's motion to dismiss Counts II and IV.

## II. Breach of contract claims (Counts I and III)

JPMC next argues that Plaintiff's breach of contract claims fail because they "are both based on the contention that JPMC should not have permitted Joel to conduct transactions in the

7

New Accounts between February 23, 2012 to April 17, 2012." (R. 53, Mot. to Dismiss at 9.) The Prior Order dismissed all claims relating to transactions prior to February 23, 2012, as they were time-barred under Plaintiff's contract with JPMC. (R. 46, Mem. Op. & Order at 24-25.) Because the Old Accounts had been closed in April 2011 and Plaintiff's money transferred to the New Accounts, all of her surviving claims relate to transactions in the New Accounts. (*Id.* at 21.) However, JPMC argues, the signature cards for the New Accounts, attached to Plaintiff's SAC, show that Joel alone opened them on April 29, 2011, and only added Plaintiff as a signatory on May 1, 2011. (R. 53, Mot. to Dismiss at 9-10.) According to JPMC, because Joel opened the New Accounts, he was authorized to transact in them: "There is no agreement between JPMC and Plaintiff that would prevent Joel from transacting business from the New Accounts he opened." (R. 53, Mot. to Dismiss at 10.) As such, JPMC argues, Plaintiff cannot maintain a breach of contract suit against JPMC for allowing Joel to access funds in the New Accounts. (*Id.*)

Although Plaintiff again fails to respond to this argument, the SAC does allege two distinct bases for her breach of contract claims. First, as JPMC acknowledges, Plaintiff pleads breach of contract based on JPMC allowing Joel to remove funds from her accounts. (R. 48, SAC at ¶¶ 35, 71.) Second, Plaintiff also alleges a claim for breach of contract based on JPMC "allowing and accepting forged signature cards from Joel," thus allowing him access to her accounts. (*Id.* at ¶¶ 34, 70.) Either theory of breach, if viable, could entitle her to damages for Joel's alleged transactions between February 2012 and April 2012. Ultimately, however, both theories fail and, with them, so do Plaintiff's claims for damages.

### A. Accepting Joel's signature cards

For the reasons stated in the Prior Order, Plaintiff's claim that JPMC breached its contract by allowing Joel to sign on to the accounts without Plaintiff's authorization fails. In the

Prior Order, the Court held that Plaintiff's breach of contract claims regarding transactions occurring prior to February 23, 2012, were time-barred. In relevant part, the Court noted that the Account Terms governing the accounts required Plaintiff to review her monthly account statements and to notify JPMC in writing of any errors or unauthorized items "within 30 days of the date on which the unauthorized item, or the Account statement that contained a description of the unauthorized item or error, was mailed, transmitted or otherwise made available to [Plaintiff]." (R. 46, Mem. Op. & Order at 9-10.). By agreeing to the Account Terms, Plaintiff also agreed to notify JPMC in writing of the non-receipt of an expected account statement within thirty days. (*Id.* at 10.) Finally, the Account Terms provided that:

> If Plaintiff fails to report an unauthorized item or error, or that she did not receive her scheduled account statement, within this 30-day time frame, she agrees 'that such items and errors shall therefore be fully enforceable against [her] and [she] shall have no claim against [JPMC] for same and shall be barred from bringing any action against [JPMC] that is in any way related to the unauthorized item or errors.'

(*Id.* at 10 (quoting R. 22-2, Ex. A, Account Terms for Dec. 31, 2008, through Dec. 31, 2010, at 19; R. 22-2, Ex. B, Account Terms for Jan. 1, 2011, through Jan. 31, 2012, at 57).) Plaintiff claimed that she had not received account statements by which she might have discovered the unauthorized transactions until March 2012; however, the Account Terms state that a failure to inform JPMC within thirty days of unauthorized transactions, or that she did not receive the account statements that would reveal those unauthorized transactions, time-bars those claims. Accordingly, the Court granted summary judgment with regard to all transactions that occurred more than thirty days prior to March 24, 2012, the date on which she gave notice to JPMC. (*Id.* at 24-25.)

For the same reasons, Plaintiff's breach of contract claim against JPMC for allowing Joel to add himself as a signatory to the Old Accounts is also time-barred. Prior to October 2009,

9

Plaintiff's account statements were addressed solely to her. (*See, e.g.*, R. 38 at 82.)[2] Within these statements, the account details for each account list their signatories: Prior to October 2009, Accounts 4531 and 7373 list only Plaintiff. (*See, e.g.*, R. 38 at 84, 86.) Beginning with the statement covering September 22, 2009, through October 21, 2009, however, each account statement is addressed to "Denise R Kaplan or Joel M Kaplan." (*See, e.g.*, R. 38 at 88.) Similarly, the signatories to Accounts 4531 and 7373 are listed as "Denise R Kaplan or Joel M Kaplan." (*See, e.g.*, R. 38 at 90, 92.) Because Plaintiff alleges that she did not authorize Joel to join the account, these changes qualify as "unauthorized item[s] or error[s]" of which Plaintiff was obliged to notify JPMC within thirty days. (R. 22-2, Ex. A, Account Terms for Dec. 31, 2008, through Dec. 31, 2010, at 19; R. 22-2, Ex. B, Account Terms for Jan. 1, 2011, through Jan. 31, 2012, at 57.) Because she did not do so, she has "no claim against [JPMC] for same and shall be barred from bringing any action against [JPMC] that is in any way related to the unauthorized item or errors." (R. 22-2, Ex. A, Account Terms for Dec. 31, 2008, through Dec. 31, 2010, at 19.) In other words, JPMC allegedly breached its contract with Plaintiff by allowing Joel access to the accounts in October 2009, and this action was reflected in the account statements it made available to Plaintiff; nonetheless, she did not notify JPMC of any error until March 2012 and did not file her complaint in this action until June 26, 2014. Although Plaintiff seeks damages only for later transactions that were caused by this alleged breach, any such claim would be "in

---

[2] Although the documents included in docket numbers 22 and 38 are not attached to or directly mentioned in the SAC, they became part of the record when the Court ruled on JPMC's motion for summary judgment. As the veracity of these documents was admitted in advance of the Order, (R. 33, Pl.'s Resp. to Def.'s Facts at ¶¶ 7-8, 42), the Court may take judicial notice of them in deciding the present motion to dismiss. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1084 (7th Cir. 1997) ("A court may only take judicial notice from sources whose accuracy cannot reasonably be questioned.") (internal quotation marks and citation omitted); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (affirming district court's reliance on public court documents filed in an earlier proceeding).

any way related to" that breach and thus would be barred by the Account Terms. *See QuickClick Loans, LLC v. Russell*, 943 N.E.2d 166, 172 (Ill. App. Ct. 2011) ("Unambiguous contract terms must be given their plain and ordinary meaning.") (citation omitted).

Accordingly, the Court finds that, because Plaintiff failed to notify JPMC within thirty days of either her non-receipt of account statements or of the bank's alleged breach in allowing Joel to transact in the accounts, she is barred from bringing a claim against JPMC relating to this alleged breach pursuant to the Account Terms.

### B. Transactions occurring between February 23, 2012, and April 17, 2012

JPMC argues that claims relating to transactions occurring between February 23, 2012, and April 17, 2012, which the Prior Order found not to be time-barred by the Account Terms, should be dismissed because no contract between Plaintiff and JPMC prohibited Joel from transacting in the New Accounts. To the contrary, the signature cards for the New Accounts, attached to the SAC, show that the accounts were opened on April 29, 2011, whereas Plaintiff was added to the accounts on May 1, 2011. (R. 53, Mot. to Dismiss at 9-10.) Because Joel alone opened the accounts, JPMC argues that he was entitled to transact in them and Plaintiff "was merely a joint account owner." (*Id.* at 10.) Plaintiff does not respond to this argument. In fact, the SAC does not address any issues raised by the remaining transactions being made in the New Accounts rather than the Old Accounts. Additionally, Plaintiff's response to JPMC's motion to dismiss acknowledges that JPMC has made this argument, but it only responds by stating that "the chain of events were [sic] the results of JPMC's direct and indirect actions and inactions allowing the events to unfold as stated." (R. 54, Pl.'s Mem. Opp'n Mot. Dismiss at 2.)

In order for the present transactions to be recoverable, JPMC must have breached a contract with Plaintiff in allowing them. *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d

616, 626 (7th Cir. 2013) ("Under Illinois law, a plaintiff asserting a breach of contract must plead and prove: (1) the existence of a contract, (2) the performance of its conditions by the plaintiff, (3) a breach by the defendant, and (4) damages as a result of the breach.") (internal quotation marks and citations omitted). As described above, JPMC's alleged breach in allowing Joel to be added to the Old Accounts is barred by the Account Terms and thus cannot support a claim for damages. As outlined in the Prior Order, claims pertaining to any transactions occurring before February 23, 2012, are also barred. The only possible basis remaining for Plaintiff's claims is that Joel's alleged transactions breached a contract between Plaintiff and JPMC at the time that they were made.

Although the Account Terms governing the New Accounts from February 2012 onward are not presently before the Court,[3] Plaintiff attached signature cards for the New Accounts to the SAC. (R. 48, SAC, Ex. D, G.) Plaintiff alleges that she believed that the New Accounts were governed by the same signature cards as the Old Accounts, that she did not know that Joel was a signatory on the Old Accounts, and that her signature was forged on each of the New Accounts' signature cards. (R. 48, SAC at ¶¶ 25-27, 61-63.) There are in fact two signature cards with relation to the New Accounts: the cards that added Plaintiff as a signatory on the accounts on May 1, 2011, which Plaintiff attached to the SAC, and the cards signed by Joel alone on April

---

[3] The Account Terms covering January 2011 through January 2012 were part of the record considered by the Court in its prior order. (R. 22-2, Ex. B, Account Terms for Jan. 1, 2011, through Jan. 31, 2012.) JPMC has submitted the Account Terms for February 1, 2012, through March 23, 2013, as an exhibit to its motion to dismiss. (R. 53, Ex. 2.) However, the Court may only consider facts taken from the SAC, the exhibits attached to the SAC, or matters upon which the Court may take judicial notice. *Williamson*, 714 F.3d at 436 (citation omitted). As this contract does not fall within any of these categories, nor was it mentioned by the SAC, the Court has not considered it in deciding the motion.

29, 2011, which were submitted by JPMC in response to Plaintiff's statement of additional facts at the summary judgment stage. (R. 40-2, Ex. 1 at 5; *id.*, Ex. 3 at 9.)[4]

The signature cards themselves demonstrate that the New Accounts were opened by Joel alone. The April 29 signature cards show Joel as the only signatory to the New Accounts on the date that they were opened; they also list Plaintiff's name under "CUSTOMER(S) TO BE ADDED LATER." (R. 40-2, Ex. 1 at 5; *id.*, Ex. 3 at 9.) The May 1 signature cards similarly indicate that the New Accounts were opened on April 29, 2011; Plaintiff's allegedly forged signature is dated May 1, 2011, and the signature cards indicate that Joel's signature was "on file" already at the time that Plaintiff was added as a joint accountholder. (R. 48, SAC, Ex. D, G.) Whether Plaintiff's signature was forged or not on May 1, 2011, does not call into question when the accounts were opened or that Joel was a signatory to the account, by himself, before Plaintiff. The clear implication of the signature cards for the New Accounts, even with all reasonable inferences being made in her favor, is that Joel opened the accounts, entered into a

---

[4] Although these earlier signature cards, included in docket number 40-2, are not attached to the SAC, the Court may consider them as "a concededly authentic document [that] is referred to in a complaint and [that] is central to the plaintiff's claim." *Gillis v. Meisner*, 525 Fed. App'x 506, 509 (7th Cir. 2013). The SAC notes that "there were in fact signature cards for account X0250," (R. 48, SAC at ¶ 27), and similarly for account 0610, (R. 48, SAC at ¶ 63). These signature cards are the originating documents creating the New Accounts, *see Continental Cas. Co. v. Am. Nat'l Bank & Trust Co. of Chi.*, 768 N.E.2d 352, 357 (Ill. App. Ct. 2002) ("A binding contract between a bank and its depositor is created by signature cards and a deposit agreement."), and thus establish the contract governing those accounts. "These documents are central to [Plaintiff's] claim as they constitute the core of the parties' contractual relationship." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431-32 (7th Cir. 1993). And Plaintiff has not contested the authenticity of these signature cards, confirming that the April 2011 cards, which indicate that Joel's signature was already on file, are authentic even though she alleges that her signature was forged. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009) (approving consideration of documents when, "[a]lthough [plaintiffs] argue that certain statements in the documents are untrue . . . the district court took plaintiffs' point of view on all such disputes"); *see also Tierney*, 304 F.3d at 738 (observing that, for this exception, "the usual example is a contract, in a suit for breach of contract."). Even if these signature cards did not fall within this exception, they would fall within the judicial notice exception for public court documents before the Court as it considered the motion for summary judgment. *See Henson*, 29 F.3d at 284.

contract with JPMC, and later added Plaintiff as a joint accountholder. When the New Accounts were opened by Joel, he entered into a contract with JPMC. *Continental Cas. Co.*, 768 N.E.2d at 357. When Joel added Plaintiff to the accounts, they became "joint tenants with rights of survivorship" under the Account Terms. (R. 22-2, Ex. B, Account Terms for Jan. 1, 2011, through Jan. 31, 2012, at 58-59.) In relevant part, the Account Terms state, with regard to a joint account, "We may, at our sole discretion, act upon . . . instructions of any joint owner, including withdrawing funds[.]" (*Id.*) Because Plaintiff's only status on the New Accounts was as a joint accountholder, and because the Account Terms authorize JPMC to allow withdrawals initiated by any joint accountholder, these transactions did not constitute a breach of JPMC's contract with Plaintiff. *See Pescetto v. Colonial Trust & Sav. Bank*, 489 N.E.2d 1365, 1366 (Ill. 1986) ("A joint bank account is not the same as a joint tenancy in real property, and is subject to the provisions of the contract between the bank and its depositors. . . . Only *one* signature was required to transact business as to the interest of *both* joint tenants."). Plaintiff does not allege the existence of a contract between herself and JPMC that would supersede Joel's or prevent him from transacting in the New Accounts, nor does she allege facts supporting the inference that one exists.

Having pled no legally tenable breach of contract claim, whether by JPMC allowing Joel to add himself to the Old Accounts, by JPMC allowing Joel to transact in the Old Accounts, or by JPMC allowing Joel to transact in the New Accounts, Plaintiff has failed to state a claim under Rule 12(b)(6). Even taking all Plaintiff's allegations as true and drawing all reasonable inferences in her favor, the SAC fails to allege a surviving breach of contract claim on which to recover damages. Thus, the Court grants JPMC's motion to dismiss Counts I and III.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (R. 53) is GRANTED. This claim is DISMISSED with prejudice.

ENTERED: /s/ Rubén Castillo
Chief Judge Rubén Castillo
United States District Court

**Dated: November 24, 2015**